**The Merchants Loan & Trust Company et al., Appellees, v. The Northern Trust Company et al., Appellees, impleaded with Marshall Field et al., Appellants.**

## Gen. No. 17,134.

1. WILLS—*canon of construction.* The cardinal canon of construction in the interpretation of a will is from the whole context to gather the intent of the testator, and when so gathered, to declare it.

2. WILLS—*powers of trustees.* Held, under the construction of the provisions of the will in question in this case, that the trustees were authorized and empowered to invest the trust funds of the estate represented by them in real estate located as well in other states as in the State of Illinois.

3. TRUSTS—*powers of trustees to invest funds of estate.* If trustees appointed by a will are domiciled in this state and sub-

ject to the jurisdiction of its courts, there is no prevailing public policy which forbids their exercise of a power conferred by will to invest the funds of the estate in real estate located in states other than in Illinois.

Bill to construe will. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the December term, 1909. Affirmed. Opinion filed November 28, 1910.

HOLLAND & ELLIOTT, for appellants.

WILSON, MOORE & McILVAINE and ISHAM, LINCOLN & BEALE, for appellees.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Marshall Field, a citizen of Chicago who amassed a great fortune, died testate. His last will and testament is embraced in a will with two codicils thereto. After disposing of a considerable portion of his estate by specific bequests he created a trust as to the residue of his estate primarily for the benefit of his two grandsons, Marshall and Henry Field. The duration of this trust will embrace about one-third of a century of time from the death of the testator. The trustees of such residuary estate are the appellees in this appeal. The *corpus* of the trust estate is said to be not less than thirty millions of dollars in value, of which the appellees, The Northern Trust Company, Chauncey Keep and Arthur B. Jones are trustees of a fund amounting to two millions of dollars, the main beneficiary being Ethel Field Beatty, the daughter and only surviving child of the testator. The Merchants Loan & Trust Company and the above named Chauncey Keep and Arthur B. Jones are the trustees of the remaining residuary trust estate. The bill in this case was filed by the last named appellees for the sole purpose of procuring a judicial construction as to their powers under the will relating to the investment of the residuary estate.

It appears that the estate left by the testator was about equally divided between real and personal property. His keenness and sagacity as an investor were such that he did not confine his investments within the borders of the State of his domicile, but owned both real and personal property in other States of the Union. He owned real estate not only in Chicago but in New York City and in the States of Massachusetts, Wisconsin, Washington and Minnesota, and stocks of railroad, industrial and other companies incorporated not only in Illinois but in other States. Since the death of Marshall Field and in assumed accord with the powers granted by his will the trustee complainants took title by purchase to two pieces of valuable Chicago real estate and have acquired *pro rata* shares of additional issues of stock in several corporations in which testator owned stock, and paid therefor with trust funds. The bill prays that a decree may be entered ratifying and confirming the investments made and construing the will of testator as to the powers therein conferred upon the trustees as to the kinds and classes of property in which they may invest trust funds, and as to whether the power conferred includes the power to invest trust funds in real estate in this State as well as within other States of the Union and in stocks of corporations organized in this and other States. Those parts of the will pertinent for consideration in construing and determining the powers either expressly granted or necessarily implied therefrom are embraced within the 21st and 23rd articles of the will, and they are here set forth for a convenient understanding of the matter in hand and to segregate them from the complicated and voluminous remaining provisions of the will, which are not involved in this proceeding. They are as follows:

"I hereby give to and invest them, and their successors and associates in trust, with such powers over and such title and estate in and to the property in this will devised and bequeathed as may be necessary

48 APPELLATE COURTS OF ILLINOIS.

The Merchants L. & T. Co. v. The Northern T. Co., 159 Ill. App. 45.

or convenient to carry into full effect my intentions and designs in the execution of this will, and in the several devises, donations and legacies herein specified and made.

"If at the time of my decease I shall be the owner of any lands, tenements or hereditaments situate, lying and being in any other state or country than the State of Illinois aforesaid, and the laws of such other state or country shall be such that any of the provisions of this instrument shall or might be in conflict therewith, or would be to any extent made ineffective or inoperative thereby, then it is my will and I direct that my executors and residuary trustees shall have the power and shall proceed forthwith to sell such lands and convert them into money or other personal property and the proceeds of such sale shall be applied as the property sold and converted was directed to be.

"While I do not wish to control or embarrass the discretion of my executors and residuary trustees, it is my desire that they shall retain for my estate the better class of securities, including mortgages, railroad or other corporate stocks or bonds, and other securities in which they may find any part of my estate invested at my death, and that in selling or converting any securities they shall in the first instance dispose of such as in their judgment shall seem to be of the less substantial and enduring value for the purpose of investment.

"To the respective trustees of the several trust funds or estates created by this my will, I give and devise full powers of management and control of the respective trust funds or estates, to invest and reinvest the same, and to vary the securities and property in which from time to time such trust funds or estates may be invested and to let and demise any lands and tenements at their discretion respectively; but in making leases it is my desire that preference be given to leases for long terms rather than shorter ones, not exceeding, however, except in cases of ground leases for building purposes, the period of twenty (20) years. The respective trustees are authorized and empowered to sell, transfer and convey any of the trust property

for the purpose of rebuilding or for reinvestment, and in case any buildings or building being part of the trust property shall be damaged or destroyed by fire, they may use any and all insurance money that may come to their hands, and any other money or personal property of. the trust estate for the purpose of restoring said buildings or building, or of rebuilding on the same premises in their discretion; but they shall have no power to borrow money or to mortgage any property.

"It is my desire that the respective trustees shall give a preference, whenever it may be practicable to do so, to the making of ground leases instead of sales of lands, under their powers of sale. In making such leases, however, I direct my said trustees before giving possession of demised premises to require and take from the lessee or lessees in every lease adequate security that the lessee or lessees shall within a reasonable time erect or cause to be erected upon the demised premises a building that shall, where the situation and character of the property will in the judgment of my trustees justify such requirement, be of first class fire proof construction.

"It is my will and I direct that investments be made with reference to the security of the trust fund rather than the rate of interest or income to be derived from it, and that where real and personal property have been given in trust, a proper proportion be maintained between them. It has been my general intention to keep at least half of my property in real estate and the rest in personal property; but in this particular my trustees are to exercise their own discretion and act in each case as may under the circumstances seem best to them."

The decree prayed was entered and the minor defendants ask this review.

The will of Marshall Field contains no direct or explicit direction as to the character of property in which the trustees shall invest and keep·invested the trust funds, or as to the *situs* of such property or as to the nature or quality of corporations, whether

foreign or domestic, in which such funds shall be invested, in either stocks or bonds or both. But the will is replete with suggestion and advice which clearly and indisputably indicate a well settled intention in this regard. Not only by suggestion and advice is such intention made clearly manifest, but by the example of his own conduct in this regard, in the acquisition of the estate he accumulated and which came to the possession of his trustees as such, did he unmistakably shadow forth his wish that his own conduct and method should be continued in the management of the trust estate. What can more naturally be gathered from this will than that Marshall Field in effect said to his trustees, "My experience in the world of business and finance has convinced me that the safe and lucrative channels of investment are along the lines of the properties which I have so successfully accumulated. In the interest of the trust estate confided to your care, and for the welfare of the beneficiaries of the trust by me created, I desire that you continue to manage and invest and reinvest the trust estate as near as ever changing conditions will allow along the same lines and in the same character and kind of property, both real and personal, as I did in accumulating these investments."

The cardinal canon of construction in the interpretation of a will is from the whole context to gather the intent of the testator, and when so gathered to declare it; or, in the words of the Supreme Court of Pennsylvania *in re* Rush's Estate, 12 Pa. St. 375, "The question is one of intention and depends, not on a rule of law, but on the interpretation of the will."

Marshall Field clothed his trustees with ample and broad discretion in the management of the trust estate and with full and unhampered powers in the sale, investment and reinvestment of the trust funds. When it is recalled that Marshall Field's investments maintained a parity between real and personal property, the following language found in the will is fraught

with convincing significance: ''that investments be made with reference to the security of the trust fund rather than the rate of interest or income to be derived from it, and that where real and personal property have been given in trust a proper proportion be maintained between them.'' To hold that the trustees are confined to investments in this State, or to investments in personal property only, and cannot acquire with the trust funds real estate in this or other States of the Union, would do violence to the testator's clearly defined intention and defeat the purposes of acquisition by the trustees of property for the trust estate of the character acquired by himself, which acquisition the tenor of his will makes clear was his intention.

In support of this conclusion we quote several excerpts from the will of Marshall Field, found in the very helpful brief of the learned counsel for appellees:

''I give and devise full powers of management and control of the respective trust funds or estate, to invest and reinvest the same, and to vary the securities and property in which from time to time such trust funds or estates may be invested, and to sell and demise any lands and tenements at their discretion respectively.

*     *     *     *     *     *     *     *

''The respective trustees are authorized and empowered to sell, transfer and convey any of the trust property for the purpose of rebuilding or for reinvestment.

*     *     *     *     *     *     *     *

''It is my desire that the respective trustees shall give a preference, whenever it may be practicable to do so, to the making of ground leases instead of sales of land, under their powers of sale.

*     *     *     *     *     *     *     *

''It is my will and I direct that investments be made with reference to securing the trust funds rather than the rate of interest or income to be derived from it, and that where real and personal property have been given in trust, a proper proportion be maintained between them. It has been my general intention to keep

at least half of my property in real estate and the rest in personal property, but in this particular my trustees are to exercise their own discretion and act in each case as may under the circumstances seem best to them."

There is no restriction in the will, either direct or implied, that the trustees shall confine their purchases of real estate from trust funds to lands in this State. On the contrary testator was the owner of lands, as above recited, in several States outside of Illinois, including city lots in New York City and tracts of land in Western States as far west as the State of Washington. That he desired such investments to be retained by the trustees is seemingly indisputable from the fact that he directed their sale only when the laws of the State were in conflict with their being retained. And if it may be said, as we have already intimated that it may, that it was the intention of the testator, made manifest by his will, that the trustees should follow the policy pursued by himself in making his investments, then it must be admitted that he clothed the trustees with power to acquire for their respective trusts real estate not only in Illinois, but in other States of the Union, unless it can be said that such investments are contrary to the policy of our State and so declared by our courts. It is admitted that our courts have not yet so decided nor in fact passed upon this question. The argument that the investment of the funds of the trust estate in real estate in other States in permitting the trust funds to escape from the jurisdiction of our courts, while in some aspects logical, is not convincing. The trustees of both trusts are domiciled in this State and are at all times answerable to the beneficiaries, in so far as their trusteeship is properly involved, for any breach of their trust in the courts of this State, and the jurisdiction of our courts may be as effectually invoked in disputes arising from investments made outside of the State as to those investments made within it. McCullough v. Mc-

Cullough, 44 N. J. Eq. 313, and *In re* Reed, 45 N. Y. App. Div. 196, are claimed to support the contention of the learned counsel for appellants, and this claim is not disputed. However, Tennant v. Staley, 75 L. J. Rep. 56, Amory v. Green, 13 Allen 413, Thayer v. Dewey, 185 Mass. 68, and *In re* Hall, 164 N. Y. 196, in effect announce the doctrine that in the absence of statutory authority uncontrolled powers of investment will not be held to limit investments to the state or country where the trust was created. On the other hand, the statute of 1905, section 1, concerning investments by trustees, whose powers are not designated by the instrument of their creation, confers power to invest in securities outside of this State and in express terms authorizes investments of trust funds in the bonds of any of the States of the United States or upon first mortgages upon real estate in any State or in the first mortgage bonds of any corporation in any State. This would seem to announce a policy of the State as not only recognizing but authorizing investments of trust funds in property in States without our own borders. If a trustee, without express power, may in virtue of this statute acquire for the trust estate first mortgages on real estate in any State which may make it necessary, in the protection of the trust fund so invested, for the trustee to acquire the title to the mortgaged premises on foreclosure, or otherwise, how can it be seriously contended that the policy of the State inhibits a trustee, with powers conferred so to do, from making an investment in real estate in a State other than this? We therefore hold that the power of the trustees to invest trust funds, in their discretion, in real estate in States other than Illinois, conferred by construction of the will as the intention of the testator, is not circumscribed or affected by any State policy, nor in conflict with it, but on the contrary is favored by the policy of the State as expressed in the statute *supra*.

The action of the trustees in acquiring a *pro rata* of

new issues of stock owned by testator and forming part of the trust estate, was clearly in pursuance of their duty under the will and is sanctioned by the statute last referred to in these words: "Any trustee may continue to hold any investment received by him under the trust or any increase thereof." They are therefore doubly fortified in their action in this regard. So far the results of such investments show the wisdom of their action and the sagacity of the testator in making the original investments. In cases of this character and under circumstances ordinarily to be foreseen, the action of a trustee in fostering the investments made by the creator of the trust cannot be questioned as imprudent. A failure in this case of the trustees to have pursued the course which they did might have subjected them to severe criticism and have bordered very near to an inexcusable breach of duty.

The decree of the Circuit Court construing the trust clauses of the will of Marshall Field here involved and defining the powers of the trustees thereunder meets with our approval, and being in our opinion without error it is affirmed.

*Affirmed.*